## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASIAH LEONARD, *individually and on behalf of all others similarly situated,*<br><br>           Plaintiff,<br><br>   v.<br><br>LA SALLE UNIVERSITY,<br><br>           Defendant. | Case No. 2:24-cv-00062-JS |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...........................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..................................................2

TERMS OF THE PROPOSED SETTLEMENT AGREEMENT ...................................3

    I.      THE PROPOSED SETTLEMENT CLASS .........................................3

    II.     MONETARY TERMS...........................................................................4

    III.    NON-CASH BENEFITS .......................................................................5

    IV.    DISMISSAL AND RELEASE OF CLAIMS .......................................5

    V.     RESULTS OF SETTLEMENT ADMINISTRATION AND NOTICE ............................................................................................6

ARGUMENT .................................................................................................................7

    I.      STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS....................................................................................7

        A.    The Law Favors and Encourages Settlements .............................7

        B.    The Settlement Must be Procedurally and Substantially Fair, Adequate, and Reasonable..................................................8

    II.     THE PROPOSED SETTLEMENT IS PROCEDURALLY AND SUBSTANTIALLY FAIR, ADEQUATE, AND REASONABLE.......................9

        A.    The Settlement Satisfies the Requirements of Rule 23(e)(2).....................9

            1.    Plaintiff and Class Counsel Have Adequately Represented the Settlement Class........................................9

            2.    The Proposed Settlement Was Negotiated at Arm's-Length.........11

            3.    The Proposed Settlement is Adequate in Light of the Litigation Risks, Costs and Delays of Trial and Appeal ................................11

                a.    The Risks of Establishing Liability...................................11

                b.    The Risks of Establishing Damages at Trial.....................13

i

    c.  The Settlement Eliminates the Additional Costs
      and Delay of Continued Litigation ....................................13

    d.  The Proposed Method for Distributing Relief
      Is Effective ........................................................................14

    e.  Class Counsel's Request for Attorneys' Fees
      Is Reasonable ....................................................................15

    f.  The Settlement Ensures Settlement Class
      Members Are Treated Equitably.........................................15

III.  THE *GIRSH* FACTORS FAVOR SETTLEMENT. ...............................................16

  A.  The Complexity, Expense, and Likely Duration of the Litigation ...........16

  B.  The Reaction of the Class to the Settlement .................................16

  C.  The Stage of the Proceedings and the Amount
    of Discovery Completed ......................................................17

  D.  The Risks of Establishing Liability and Damages and the Risks
    of Maintaining the Class Action through Trial .........................................17

  E.  The Ability of Defendant to Withstand a Greater Judgment. ...................18

  F.  The Range of Reasonable in Light of Best Possible
    Recovery and All Attendant Risks of Litigation.......................................19

IV.  THE *PRUDENTIAL* FACTORS ARE SATISFIED................................................19

  A.  Maturity of the Substantive Issues ............................................................19

  B.  The Existence and Probable Outcome of Claims by Other Classes
    and Subclasses ............................................................................20

  C.  The Comparison between the Results Achieved by the Settlement
    for Individual Class or Subclass Members and the Results Achieved
    or Likely to be Achieved for Other Claimants...........................................20

  D.  Whether Class or Subclass Members Are Accorded the Right
    to Opt-Out of the Settlement....................................................................21

  E.  Whether Any Provisions for Attorneys' Fees Are Reasonable ................21

F.  Whether the Procedure for Processing Individual Claims under the Settlement Is Fair and Reasonable ...............................................21

V.  THE MANNER OF DISTRIBUTION OF THE NET SETTLEMENT FUND IS FAIR AND ADEQUATE ...............................................................................22

VI.  THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT .........................22

VII.  NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ..........................23

CONCLUSION........................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor,*
 521 U.S. 591 (1997) ........................................................................................... 7

*Beck v. Manhattan Coll.,*
 2023 WL 4266015 (S.D.N.Y. June 29, 2023) ...................................... 18

*Beck v. Maximus, Inc.,*
 457 F.3d 291 (3d Cir. 2006) ........................................................................ 10

*Bell Atl. Corp. v. Bolger,*
 2 F.3d 1304 (3d Cir. 1993) .......................................................................... 16

*Bergeron v. Rochester Inst. of Tech.,*
 2023 WL 1767157 (W.D.N.Y. Feb. 3, 2023) ...................................... 11

*Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining
and Manufacturing Company),*
 513 F. Supp. 2d 322 (E.D. Pa. 2007) .................................................. 22

*Dewey v. Volkswagen Aktiengesellschaft,*
 681 F.3d 170 (3d Cir. 2012) ........................................................................ 10

*Eichenholtz v. Brennan,*
 52 F.3d 478 (3d Cir. 1995) ............................................................................ 7

*Girsh v. Jepson,*
 521 F.2d 153 (3d Cir. 1975) ........................................................... 1, 7, 8, 13

*In re Baby Prod. Antitrust Litig.,*
 708 F.3d 163 (3d Cir. 2013) ........................................................................ 23

*In re Cendant Corp. Litig.,*
 264 F.3d 201 (3d Cir. 2001) ................................................................... 16, 17

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.,*
 269 F.R.D. 468 (E.D. Pa. 2010) ......................................................... 16, 25

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.,*
 55 F.3d 768 (3d Cir. 1995) ....................................................... 7, 16, 19

*In re Linerboard Antitrust Litig.,*
 321 F. Supp. 2d 619 (E.D. Pa. 2004) .................................................. 19

*In re N.J. Tax Sales Certificate Antitrust Litig.*,
   750 F. App'x 73 (3d Cir. 2018) .................................................................. 8

*In re Nat. Football League Players' Concussion Inj. Litig.*,
   307 F.R.D. 351 (E.D. Pa. 2015) .............................................................. 18

*In re Nat'l Football League Players Concussion Inj. Litig.*,
   821 F.3d 410 (3d Cir. 2016) ............................................... 11, 17, 18, 23

*In re Pet Food Prods. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010) ...................................................................... 9

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ................................................. 1, 9, 11, 17

*In re Ravisent Techs., Inc. Sec. Litig.*,
   2005 WL 906361 (E.D. Pa. Apr. 18, 2005) .......................................... 15

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
   2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ................................ 19, 21, 22

*In re Suffolk Univ. Covid Refund Litig.*,
   2022 WL 6819485 (D. Mass. Oct. 11, 2022) ........................................ 18

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ................................................. 7, 17, 18, 19

*Lazy Oil Co. v. Witco Corp.*,
   166 F.3d 581 (3d Cir. 1999) ...................................................................... 7

*Omori v. Brandeis Univ.*,
   673 F. Supp. 3d 21 (D. Mass. 2023) ...................................................... 12

*Ripley v. Sunoco, Inc.*,
   287 F.R.D. 300 (E.D. Pa. 2012) .............................................................. 10

*Serrano v. Sterling Testing Sys., Inc.*,
   711 F. Supp 2.d 402 (E.D. Pa. 2010) ...................................................... 16

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) .................................................................... 15

*Tumpa v. IOC-PA, LLC*,
   2021 WL 62144 (W.D. Pa. Jan. 7, 2021) .............................................. 17

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
   726 F.2d 956 (3d Cir. 1983) ................................................................. 15

*Wright v. S. New Hampshire Univ.*,
   2021 WL 1617145 (D.N.H. Apr. 26, 2021) ........................................... 25

*Zenith Labs., Inc. v. Carter–Wallace, Inc.*,
   530 F.2d 508 (3d Cir. 1976) ................................................................. 18

**Rules**

Fed. R. Civ. P. 23 ................................................................... 9, 23, 25

Fed. R. Civ. P. 23(a) .................................................................. 12, 23

Fed. R. Civ. P. 23(b) ........................................................................ 7

Fed. R. Civ. P. 23(b)(3) ............................................................. 12, 23

Fed. R. Civ. P. 23(c)(2)(B) .............................................................. 23

Fed. R. Civ. P. 23(e) ......................................................... 1, 2, 8, 23

Fed. R. Civ. P. 23(e)(1)(B) .............................................................. 23

Fed. R. Civ. P. 23(e)(2) ...................................................... 1, 8, 9, 16

Fed. R. Civ. P. 23(e)(2)(A) ........................................................... 9, 11

Fed. R. Civ. P. 23(e)(2)(B) .............................................................. 11

Fed. R. Civ. P. 23(e)(2)(C)(i) ...................................................... 11, 14

Fed. R. Civ. P. 23(e)(2)(C)(ii) ........................................................ 14

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................................... 15

Fed. R. Civ. P. 23(e)(2)(D) ............................................................. 15

Fed. R. Civ. P. 23(e)(3) .................................................................... 8

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Named Plaintiff Asiah Leonard, on behalf of herself and the Settlement Class, respectfully submits this memorandum of law in support of her motion for final approval of the settlement reached in this Action, and for approval of the manner of distribution of the Net Settlement Fund (the "Distribution"). The terms of the settlement are set forth in the Settlement Agreement and Release, dated July 23, 2024 (the "Settlement Agreement" or "Agreement"). ECF 27-3.[1]

## **INTRODUCTION**

Plaintiff brought this putative class action alleging that she and other similarly situated students are entitled to refunds of certain amounts of tuition and fees because, beginning in March 2020, La Salle University (hereinafter "La Salle" or "University") provided classes remotely in response to the COVID-19 pandemic. Plaintiff alleges she and all other La Salle students who paid tuition and/or mandatory fees for the Spring 2020 semester had implied contracts with La Salle that entitled them to in-person instruction, and that by switching to remote education in response to the COVID-19 pandemic, La Salle was liable for breach of implied contract or, in the alternative, unjust enrichment. LaSalle denies those allegations.

The Agreement represents a fair, reasonable, and adequate result for the Settlement Class and thus satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in the Third Circuit decisions of *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975) and *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998). When compared to similar settlements in the COVID-19 tuition refund context, the Agreement here provides above-average benefits when taking into consideration the monetary and non-monetary benefits. *See infra* section IV(C). The Agreement is especially beneficial to the Settlement Class considering the substantial

---

[1] The capitalized terms in this memorandum shall be construed according to their meaning as defined in the Settlement Agreement, except as may otherwise be indicated.

litigation risks Plaintiff faced. Plaintiff and Class Counsel had a thorough understanding of the strengths and weaknesses of the case before reaching the settlement as they had conducted significant factual investigation into the merits of the claims, engaged in protracted settlement negotiations, and exchanged detailed enrollment and financial information with Defendant as part of the settlement process. *See* Declaration of Nicholas A. Colella ("Colella Decl."), ¶¶ 10, 11, 14.

Given the risks to proceeding with litigation and that the Agreement achieved a satisfactory resolution relative to the damages sustained, the $875,000 Settlement Amount, the Non-Cash Benefit, and the proposed Distribution are fair, reasonable, and adequate in all aspects. Accordingly, Plaintiff respectfully requests the Court grant final approval of the Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 5, 2024, Plaintiff Asiah Leonard brought suit against La Salle University in the United States District Court for the Eastern District of Pennsylvania, Case No. 2:24-cv-00062. *See* ECF 1. On her own behalf, and on behalf of a putative class, Plaintiff asserted claims for breach of implied contract and unjust enrichment. *See id.*

La Salle filed an Answer on May 2, 2024 (ECF 23), and the Parties held their initial case management conference with the Court on May 21, 2024 (ECF 26). Following preliminary discussions regarding the merits and potential early resolution, the Parties exchanged information sufficient to permit Named Plaintiff and Class Counsel to evaluate the claims and potential defenses. The parties then exchanged proposals in an effort to reach a settlement of the Action.

On May 28, 2024, the Parties held a mediation session in front of Hon. Thomas J. Rueter (Ret.). Although the Parties did not reach a settlement during the mediation, the Parties were not at an impasse. During the weeks following mediation, the Parties were able to reach a settlement

in principle, with the guidance of Judge Rueter. The Parties thereafter executed a Term Sheet on June 27, 2024, encompassing the resolution, and provided notice of same to the Court on June 28, 2024. Over the ensuing weeks, the Parties negotiated the final terms of the Settlement and its supporting exhibits, which was filed with the Court on August 16, 2024. ECF 27. The Court held a preliminary approval hearing on September 4, 2024 (ECF 30) and granted preliminary approval on September 12, 2024 (ECF 33).

Based upon their independent analysis, and recognizing the risks of continued litigation, Class Counsel believes that the proposed Agreement is fair, reasonable, and adequate, and is in the best interest of Plaintiff and the Settlement Class. Although La Salle denies liability, it likewise agrees that Agreement is in the Parties' best interests. For those reasons, and because the Agreement is contingent on the Court's final approval, the Parties submit their Settlement Agreement to the Court for its review.

## **TERMS OF THE PROPOSED SETTLEMENT AGREEMENT**

### I.    THE PROPOSED SETTLEMENT CLASS

The proposed Settlement Class that received preliminary certification for settlement purposes is defined as:

> All La Salle undergraduate students who satisfied their payment obligations for the Spring Semester 2020 (tuition and/or mandatory fees) who were enrolled in at least one in-person on-campus class but had their class(es) moved to online learning.

ECF 33, ¶ 5. Excluded from the Settlement Class is: (i) any person who withdrew from La Salle on or before March 12, 2020; (ii) all undergraduate students who received Financial Aid equal to or exceeding the Spring 2020 Tuition and Mandatory Fees; and (iii) Defendant; Defendant's officers, directors, agents, trustees, parents, children, corporations, trustees, representatives, employees, principals, servants, partners, joint venturers, and/or entities controlled by Defendant;

and/or Defendant's heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers." *Id.* As of the Objection/Exclusion Deadline, and as of the date of this motion, there have been no Settlement Class Members who have objected or excluded themselves from the Settlement Agreement. *See* Declaration of Mark Cowen, A.B. Data, Ltd. ("A.B. Data") ("Cowen Decl."), ¶¶ 14-15.

## II.    MONETARY TERMS

The proposed Settlement Amount is a non-reversionary cash payment of eight hundred seventy-five thousand U.S. Dollars ($875,000.00). *See* SA ¶ 39. In accordance with the Settlement Agreement, the Settlement Administrator shall make deductions from the Settlement Amount for court-approved attorneys' fees and reasonable litigation costs, fees and expenses for the Settlement Administrator, and any court-approved Case Contribution Award to the Plaintiff, in recognition of the risks and benefits of her participation and substantial services she performed. *See* SA ¶ 40. After all applicable fees, expenses and awards are deducted, the Net Settlement Fund will be distributed *pro rata* to each Settlement Class Member pursuant to the Settlement Agreement. SA ¶ 4.

Following the Court's Preliminary Approval Order, La Salle paid $50,000 into an escrow account with the Settlement Administrator. *See* SA ¶ 39. Within thirty (30) days after Final Approval, La Salle shall deposit into the escrow account the sum of eight hundred twenty-five thousand dollars ($825,000). *Id.* Within sixty (60) days after Effective Date, the Settlement Administrator will send Settlement Class Members their Settlement Benefit by check. *See* SA ¶¶ 7-8. The Settlement Administrator will pay all legally mandated Taxes prior to distributing the settlement payments to Settlement Class Members. *See* SA ¶ 44.

Settlement Class Members shall have sixty (60) days from the date of distribution of the checks to cash their check for the Settlement Benefit. All funds for Uncashed Settlement Checks

shall, subject to Court approval, be returned to La Salle for a financial aid fund for La Salle students. *See* SA ¶¶ 1(mm), 8.

### III.    NON-CASH BENEFITS

In addition to the monetary Settlement Benefit, each Settlement Class Member will be entitled to receive a reduction on tuition paid in the amount of twenty-five percent (25%) for Settlement Class Members who first enroll in a La Salle in-person, on-campus Master's degree program within two years of the Effective Date. Such individuals will be expected to satisfy all generally-applicable criteria for admission and be responsible for all other costs of attendance (*e.g.*, fees, books, etc.) at the standard rates. *See* SA ¶¶ 1(t), 9.

### IV.    DISMISSAL AND RELEASE OF CLAIMS

Upon the Settlement becoming Final, Settlement Class Members shall be deemed to have forever released any and all suits, claims, controversies, rights, agreements, promises, debts, liabilities, accounts, reckonings, demands, damages, judgments, obligations, covenants, contracts, costs (including, without limitation, attorneys' fees and costs), losses, expenses, actions or causes of action of every nature, character, and description, in law, contract, tort or in equity, that any Releasing Party ever had, or has, or may have in the future, known or unknown, asserted or unasserted, upon or by reason of any matter, cause, or thing whatever from the beginning of the world to the Effective Date, arising out of, concerning, or relating in any way to (i) tuition, fees, or other similar amounts charged to, paid by, and/or incurred by or on behalf of any Settlement Class Member at La Salle in connection with, relating to, or concerning the Spring 2020 Semester, and/or (ii) the Action, and/or (iii) La Salle's transition to remote education with respect to the COVID-19 pandemic, or the implementation or administration of such remote education during the Spring 2020 semester. This definition includes but is not limited to all claims that were brought

or could have been brought in the Action. These releases were described in the Court-approved Long Form Class Notice.

## V.    RESULTS OF SETTLEMENT ADMINISTRATION AND NOTICE

Following the Court's Preliminary Approval Order, the Settlement Administrator completed the Notice plan set forth in the Settlement. *See generally* Cowen Decl. The Notice plan was designed to reach as many Settlement Class Members as practicable. The Notice included the required description of the material Settlement terms; the deadline for Settlement Class Members to opt-out of the Settlement Class; the deadline for Settlement Class Members to object to the Settlement; and the Settlement Website at which Settlement Class Members could access the Long Form Notice, Settlement Agreement, and other related documents and information. Cowen Decl., ¶ 13.

Pursuant to the Court's Preliminary Approval Order, La Salle provided A.B. Data with the Class List containing information sufficient to provide Settlement Class Members with direct notice. The Settlement Class List contained information for 3,185 Settlement Class Members. Cowen Decl., ¶ 6. A.B. Data then conducted an email address validation exercise to update addresses and remove duplicates, helping to ensure the overall deliverability of the Notice. Cowen Decl., ¶ 7. Thereafter, on October 25, 2024, A.B. Data sent the Email Notice to 2,535 Settlement Class Members for whom email addresses were available. Cowen Decl., ¶¶ 7-8; Ex. B. Of those 2,535 Settlement Class Members with valid email addresses, only 30 Settlement Class Members had an email address that was not confirmed as delivered. *Id*. Those 30 Settlement Class Members received notice via mail. Cowen Decl. ¶ 10. There were 650 Settlement Class Members who did not have an email address on file. Cowen Decl., ¶ 9. For those 650 Settlement Class Members, A.B. Data sent Notice via First-Class Mail. *Id.*; Ex. C. Of the mailed Notices, only 15 were returned as undeliverable. Cowen Decl., ¶ 11.

Further, on October 25, 2024, A.B. Data established an informational Settlement Website, www.lasallecovidsettlement.com, allowing Settlement Class Members to obtain detailed information about the Action, the Settlement, and to review important documents, including the Long Form Notice, Settlement Agreement, and other relevant documents. Cowen Decl., ¶ 13.

As a result of the Notice plan, approximately 99.5% of the identifiable Settlement Class Members received direct notice of the Settlement. The deadline to submit an objection to or opt out of the Settlement occurred on November 25, 2024. To date, no Settlement Class Member has objected to the Settlement, and no Settlement Class Member has submitted a request for exclusion. Cowen Decl., ¶¶ 14-15.

## ARGUMENT

**I.    STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS.**

### A.  The Law Favors and Encourages Settlements.

"[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). Additionally, "[t]he law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.*, 55 F.3d 768, 784 (3d Cir. 1995). But, the final approval of settlement is left to the discretion of the court. *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995). Courts in this Circuit have great discretion in such matters: "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh*, 521 F.2d at 156; *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999). In order to grant final approval of a class action settlement, the Court must first determine whether a class can be certified under Rule 23(a) and at least one prong of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

**B. The Settlement Must be Procedurally and Substantially Fair, Adequate, and Reasonable.**

Federal Rule of Civil Procedure 23(e) provides the applicable standard for judicial approval of a class action settlement. Rule 23(e)(2), as amended, provides that courts should consider certain factors when determining whether a class action settlement is "fair, reasonable and adequate" such that final approval is warranted:

(A)  whether the class representatives and class counsel have adequately represented the class;

(B)  whether the proposal was negotiated at arm's-length;

(C)  whether the relief provided for the class is adequate, taking into account:
   (i)   the costs, risks and delay of trial and appeal;
   (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
   (iii) the terms of the proposed award of attorneys' fees, including timing of payment; and
   (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  whether the proposal treats class members equitably relative to each other.

*See* Fed. R. Civ. P. 23(e)(2).

In addition to the foregoing factors, the Third Circuit considers additional factors, the first set of which comes from *Girsh*, 521 F.2d at 156:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendant to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* Importantly, no single *Girsh* factor is dispositive. The Third Circuit has explained: "a court may approve a settlement even if it does not find that each of [the *Girsh*] factors weigh in favor of approval." *In re N.J. Tax Sales Certificate Antitrust Litig.*, 750 F. App'x 73, 77 (3d Cir. 2018).

8

In addition to the *Girsh* factors, the Third Circuit, in *In re Prudential,* 148 F.3d at 324, elaborated on additional factors that reviewing courts should consider when deciding whether to approve a proposed class action settlement. These factors were then clarified in *In re Pet Food Prods. Liab. Litig.* 629 F.3d 333, 350 (3d Cir. 2010). These *Prudential* factors overlap with the *Girsh* factors and are non-exclusive. But, importantly, only the factors relevant to the litigation need to be addressed. *In re Prudential*, 148 F.3d at 323–24. The *Prudential* factors are:

(1)    the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;

(2)    the existence and probable outcome of claims by other classes and subclasses;

(3)    the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved or likely to be achieved for other claimants;

(4)    whether class or subclass members are accorded the right to opt-out of the settlement;

(5)    whether any provisions for attorneys' fees are reasonable; and

(6)    whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id.* As discussed in more detail below, the proposed Settlement satisfied the requirements of Rule 23, the *Girsh* factors, and the relevant *Prudential* factors, and should be granted final approval.

## II.    THE PROPOSED SETTLEMENT IS PROCEDURALLY AND SUBSTANTIALLY FAIR, ADEQUATE, AND REASONABLE.

### A.  The Settlement Satisfies the Requirements of Rule 23(e)(2).

#### 1.    Plaintiff and Class Counsel Have Adequately Represented the Settlement Class.

When analyzing whether a proposed class action settlement is fair, reasonable, and adequate, the Court must consider whether "the class representative[] and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "The adequacy requirement encompasses two distinct inquiries designed to protect the interests of absentee class members: it

considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 309 (E.D. Pa. 2012); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012). This test "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted). Here, both prongs of the adequacy test are met. First, Plaintiff's interests are aligned with those of the Settlement Class as they were all undergraduate students who attended La Salle during the Spring 2020 semester and enrolled in in-person classes. Second, Class Counsel are highly experienced in class action litigation, especially in the tuition refund context. Class Counsel's qualifications are set forth in the Declarations of Nicholas A. Colella (ECF 27-2) and Anthony M. Alesandro (ECF 27-5) and the Firm Resumes of Lynch Carpenter, LLP and Leeds Brown Law, P.C. (ECFs 27-4, 27-6) submitted in support of preliminary approval.

Additionally, Plaintiff and Class Counsel have adequately represented the Settlement Class by zealously prosecuting this Action, including by, among other things, extensive investigation and other litigation efforts throughout the prosecution of the Action, including, *inter alia*: (1) researching and drafting the initial complaint in the Action; (2) researching the applicable law with respects to the claims in the Action and the potential defenses thereto; (3) actively participating in similar College and University class actions filed across the country; and (4) engaging in extensive settlement discussions with Defendant's counsel and the exchange of information during informal discovery. *See generally* Colella Decl. Through each step of the Action, Plaintiff and Class

Counsel have strenuously advocated for the best interests of the Settlement Class. Plaintiff and Class Counsel therefore satisfy Rule 23(e)(2)(A) for purposes of final approval.

### 2.      The Proposed Settlement Was Negotiated at Arm's-Length.

The proposed Settlement satisfies Rule 23(e)(2)(B) because the Settlement is the product of arm's-length negotiations between the Parties' counsel overseen by an experienced mediator, Hon. Thomas J. Rueter (Ret.). Colella Decl., ¶ 24. Further, it is well settled that in the Third Circuit class action settlements enjoy a presumption of fairness under review when: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 436 (3d Cir. 2016), *as amended* (May 2, 2016). Given the above and the Declaration attached hereto, Rule 23(e)(2)(B) is satisfied.

### 3.      The Proposed Settlement Is Adequate in Light of the Litigation Risks, Costs and Delays of Trial and Appeal.

Rule 23(e)(2)(C)(i) and both sets of factors described above overlap as they address the risks posed by continuing litigation. In fact, the first *Girsh* factor is directly analogous to Rule 23(e)(2)(C)(i). As further explained below, all these factors (to the extent relevant) weigh in favor of final approval of the Settlement.

#### a.      The Risks of Establishing Liability.

In considering the risks of establishing liability, courts often consider the complexity of the issues and magnitude of the proposed settlement class. *In re Prudential*, 148 F.3d at 318. Here, while La Salle initially answered Plaintiff's Complaint, if the current action were to proceed, it is likely that La Salle would have contested the propriety of Plaintiff's claims at summary judgment (which could have resulted in the dismissal of the case). *See Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2023 WL 1767157, at *11 (W.D.N.Y. Feb. 3, 2023), *aff'd sub nom.*

*Bergeron v. Rochester Inst. of Tech.*, No. 23-271, 2024 WL 5054841 (2d Cir. Dec. 10, 2024) (granting university's motion for summary judgment as to breach of implied contract and unjust enrichment and dismissing case). It is also likely that La Salle would have contested whether Plaintiff could ultimately certify a class. *Omori v. Brandeis Univ.*, 673 F. Supp. 3d 21, 29 (D. Mass. 2023) (denying student's motion for class certification as to tuition and fees). This sort of contention between the parties would become complicated and lengthy, given the current stage of litigation. Additionally, any recovery from trial would be subject to a jury's opinion and likely appeal from either party. Considering the scenarios, the risks of continuing this litigation are very substantial, even assuming favorable facts in Plaintiff's favor.

Moreover, issues regarding responsibility for university closure are very apparent given the governmental orders for class cancellation and campus closure. La Salle likely would have filed a motion for summary judgment in which it would argue that (1) the descriptions of the fees at issue cannot support a contract claim; (2) there was never a promise to provide in-person education in exchange for tuition; (3) it was impossible to perform under Covid-19 governmental orders; and (4) Plaintiff and members of the Class still received education and obtained credits. La Salle would also likely file a comprehensive opposition to class certification in which it would argue that Plaintiff would not be able to show a material class-wide breach or unjust enrichment. La Salle would also argue that: (1) Plaintiff could not satisfy Rule 23(a)'s typicality requirement for several reasons; (2) Plaintiff's proposed Rule 23(b)(3) class was not ascertainable; (3) Plaintiff could not show causation or the existence or terms of a contract on class-wide bases; and (4) that class litigation was not superior to individual litigation. While Plaintiff does not concede the validity of any of La Salle's arguments, Plaintiff acknowledges that La Salle could raise legitimate arguments at both summary judgment and class certification as demonstrated by the cases above.

In comparison to the risks as discussed above, the Settlement as it stands currently is an excellent result for the Settlement Class as it provides above-average benefits. *See infra* section IV(C).

### b.    The Risks of Establishing Damages at Trial.

The risks of establishing liability apply with equal force to the risks of establishing damages. If this litigation were to continue, Plaintiff would rely heavily on expert testimony to establish damages, likely leading to a battle of the experts at trial and a *Daubert* challenge. If the Court were to determine that one or more of Plaintiff's experts should be excluded from testifying at trial, Plaintiff's case would become much more difficult to prove. Moreover, while Defendant did shift to distance learning and requested that most students leave campus, these steps were due to Covid-19 and the accompanying government orders, providing La Salle with an impossibility defense. Plaintiff has never disputed the necessity of these actions; the issue is whether Plaintiff and the Settlement Class were entitled to a refund of tuition and fees paid to La Salle, and a potential impossibility defense raises a risk of establishing damages and the form of such damages (*i.e.*, compensatory or restitution). Thus, in light of the significant risks Plaintiff faced at the time of the settlement with regard to establishing damages, including the possibility that Plaintiff would not be able to establish damages for each student, this factor weighs heavily in favor of final approval.

### c.    The Settlement Eliminates the Additional Costs and Delay of Continued Litigation.

The anticipated complexity, cost, and duration of the Action would be considerable, and these factors are critical in a Court's evaluation of proposed settlements. *See Girsh*, 521 F.2d at 157 (holding that the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement). Indeed, if not for the Settlement, litigation would

13

continue, and there is a high likelihood it will be expensive, protracted, and contentious litigation. Colella Decl., ¶¶ 16, 19-20. As stated previously, this would consume significant funds and expose Plaintiff and the Settlement Class to many risks and uncertainties. The preparation for what would likely be a multi-week trial and possibly appeals, would cause the Action to persist for likely several more years before the Settlement Class could possibly receive any recovery. Such a lengthy and highly uncertain process would not serve the best interests of the Settlement Class when compared to the immediate, certain monetary and non-monetary benefits of the Settlement. *Id*. Accordingly, this Rule 23(e)(2)(C)(i) factor, as well as the analogous *Girsh* factors, all weigh in favor of final approval.

### *d.* The Proposed Method for Distributing Relief Is Effective.

With respect to Rule 23(e)(2)(C)(ii), Plaintiff and Class Counsel have taken appropriate steps to ensure that the Settlement Class is notified about the Settlement and that the Settlement Benefits are properly distributed.

After all applicable fees, expenses and awards are deducted, the Net Settlement Fund will be distributed *pro rata* to each Settlement Class Member pursuant to paragraph 4 of the Settlement Agreement. Each Settlement Class Member's Settlement Benefit will be distributed to that Settlement Class Member automatically, with no action required by that Settlement Class Member.

By default, the Settlement Administrator will send the Settlement Benefit to each Settlement Class Member by check mailed to the Settlement Class Member's last known mailing address on file with the University Registrar. The Settlement Administrator has also provided a form on the Settlement Website that the Settlement Class Members may visit to provide an updated address for sending a check. Funds for Uncashed Settlement Checks shall, subject to Court approval, be returned to La Salle for a financial aid fund for La Salle students.

     *e.*     **Class Counsel's Request for Attorneys' Fees Is Reasonable.**

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Consistent with the fee request plainly documented in the Notice, and as discussed in Class Counsel's fee memorandum, Class Counsel sought an award of attorneys' fees in the amount of thirty-three and one-third percent (33.33%) of the Settlement Fund and expenses to be paid from the Settlement Fund. Such amounts are presumptively reasonable and in line with requests frequently approved in this circuit. For example, in *In re Ravisent Techs., Inc. Sec. Litig.*, Judge Surrick noted that "courts within [the Third] Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses." No. CIV.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) (citing *In re CareSciences. Inc. Sec. Litig.*, Civ. A. No. 01–5266 (E.D. Pa. Oct. 29, 2004)) (awarding one-third recovery of $3.3 million settlement fund, plus expenses).

     *f.*     **The Settlement Ensures Settlement Class Members Are Treated Equitably.**

Rule 23(e)(2)(D), the final factor, considers whether class members are treated equitably. As reflected in the Settlement Agreement, the proposed Settlement treats Settlement Class Members equitably relative to each other as all Settlement Class Members will recover a *pro rata* payout that corresponds to their individual shares of the potential damages suffered by the class, and each has the option to receive the Non-Cash Benefit. This approach clearly satisfies the fair and equitable treatment requirement. "A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)).

Based on the foregoing, Plaintiff and Class Counsel respectfully submit that each of the Rule 23(e)(2) factors support granting final approval of the settlement.

## III.    THE *GIRSH* FACTORS FAVOR SETTLEMENT.

### A.  The Complexity, Expense, and Likely Duration of the Litigation.

The first *Girsh* factor is satisfied. As discussed above, this Action raises complex factual and legal questions regarding the alleged non-deliverance of in-person education and services supported by the tuition and fees at issue. The matter at hand has had a thorough preliminary investigation and discovery and lengthy, hard-fought negotiations. The continued prosecution of these claims will require significant additional expenses to the class, given further discovery and experts. Further, no matter the outcome at the district court level, the result will likely be appealed, leading to further costs and delay any realized recovery. Thus, this settlement would avoid a myriad of unnecessary expenditures related to said further litigation. This avoidance benefits all parties while providing the Settlement Class with immediate benefits, and, thus, weighs in favor of approving settlement. *In re Gen. Motors*, 55 F.3d at 812 (holding that lengthy discovery and potential opposition by the defendant were factors weighing in favor of settlement).

### B.  The Reaction of the Class to the Settlement.

The second *Girsh* factor to consider is the reaction of the class to the settlement. To determine such a reaction, the number of objectors to the settlements is often evaluated. *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa. 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 234–35 (3d Cir. 2001)). Further, silence "constitutes tacit consent to the agreement." *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993). Finally, a low number of objectors or opt-outs is persuasive evidence that the proposed settlement is fair and adequate. *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp 2.d 402, 415 (E.D. Pa. 2010) (citing *In re Cendant*, 264 F.3d at 234–35).

This factor is satisfied as there have been zero opt-outs and no objections among class members, after being given notice of such settlement. *See* Cowen Decl., ¶¶ 14-15.

### C.  The Stage of the Proceedings and the Amount of Discovery Completed.

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement." *In re Cendant*, 264 F.3d at 235. In assessing this third factor, courts must evaluate the procedural stage of the case at the time of the proposed settlement to assess whether counsel adequately appreciated the merits of the case while negotiating. *See In re Warfarin*, 391 F.3d at 537. This does not require the parties to complete discovery. *See Tumpa v. IOC-PA, LLC*, No. 3:18-cv-112, 2021 WL 62144, at *8 (W.D. Pa. Jan. 7, 2021) (approving a settlement where the "limited discovery" was sufficient to provide the parties "with an appreciation of the merits of the case"). While the parties did not engage in extensive formal discovery, the informal discovery produced via the mediation process, review of publicly available financial statements, along with the help of neutral Hon. Thomas J. Rueter (Ret.), provided the information Class Counsel needed to objectively evaluate the strengths and weaknesses of Plaintiff's and Settlement Class Members' claims. *See* Colella Decl., ¶¶ 10, 11, 14. At its current stage, the litigation is ripe for settlement, and thus this factor favors final approval.

### D.  The Risks of Establishing Liability and Damages and the Risks of Maintaining the Class Action through Trial.

The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re NFL*, 821 F.3d at 439 (citing *In re Prudential*, 148 F.3d

at 319).[2] While Plaintiff and Class Counsel strongly believe in the merits of the case, they acknowledge the substantial risks they face at summary judgment and at class certification. *See Beck v. Manhattan Coll.*, No. 20 CIV. 3229 (LLS), 2023 WL 4266015, at *3 (S.D.N.Y. June 29, 2023), *appeal withdrawn*, No. 23-1049, 2023 WL 9233971 (2d Cir. Oct. 30, 2023) (granting summary judgment on tuition and fee claims in favor of college); *In re Suffolk Univ. Covid Refund Litig.*, No. CV 20-10985-WGY, 2022 WL 6819485, at *4 (D. Mass. Oct. 11, 2022) (denying student motion for class certification). While Plaintiff and Class Counsel are confident they could overcome any summary judgment motion La Salle could bring and are also confident they could certify a class, Plaintiff's success is far from certain. Through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all. As such, these factors weigh in favor of final approval.

### E.  The Ability of Defendant to Withstand a Greater Judgment.

The Seventh *Girsh* factor considers "whether the defendant[s] could withstand a judgment for an amount significantly greater than the settlement." *In re Warfarin,* 391 F.3d at 537–38. This factor "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL*, 821 F.3d at 440. Although La Salle may have the ability to withstand greater judgment, the favorable result here—a $875,000 settlement with additional Non-Cash Benefits—compared to the risks and expenses attendant to conducting this litigation and the

---

[2] The risks of maintaining the class action through "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin,* 391 F.3d at 537. "Because class certification is subject to review and modification at any time during the litigation, the uncertainty of maintaining class certification favors settlement," but warrants only minimal consideration. *In re Nat. Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 394 (E.D. Pa. 2015) (citing *Zenith Labs., Inc. v. Carter–Wallace, Inc.,* 530 F.2d 508, 512 (3d Cir. 1976)).

immediacy of the benefit to Settlement Class Members weigh in favor of settlement. *See In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 632 (E.D. Pa. 2004) ("[T]he settling defendant's ability to pay greater amounts [may be] outweighed by the risk that the plaintiffs would not be able to achieve any greater recovery at trial."). As such, this factor was in favor of final approval.

### F. The Range of Reasonable in Light of Best Possible Recovery and All Attendant Risks of Litigation.

In evaluating the eighth and ninth *Girsh* factors, courts ask "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* As such, "[t]his inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *In re Gen. Motors*, 55 F.3d at 813. Given that Covid-19 litigation is an emerging area of law, the risk of continued litigation is significant, making the instant Settlement, which provides significant relief to the class now as opposed to years of litigation without the guarantee of recovery, even more reasonable.

## IV.    THE *PRUDENTIAL* FACTORS ARE SATISFIED

### A. Maturity of the Substantive Issues.

"The first [*Prudential*] factor—maturity of the underlying substantive issues—substantially mirrors the third *Girsh* factor, the stage of the proceedings. Under this factor, the advanced development of the record weighs in favor of approval." *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2024 WL 815503, at *9 (E.D. Pa. Feb. 27, 2024). Here, given Class Counsel's knowledge of the applicable law in the tuition refund context, the substantive issues in this matter are quite mature. Due to the investigation and

discussion throughout the litigation of this Action and the Parties' mediation before Hon. Thomas

J. Rueter (Ret.), both Parties are in a position to fully evaluate their own strengths and weaknesses.

The stage of this Action lends itself in favor of final approval of the Settlement.

### B. The Existence and Probable Outcome of Claims by Other Classes and Subclasses.

Since no class members have elected to be excluded, this factor weighs heavily in favor of

approval. *See* Cowen Decl., ¶ 15.

### C. The Comparison between the Results Achieved by the Settlement for Individual Class or Subclass Members and the Results Achieved or Likely to be Achieved for Other Claimants

This Settlement is fair and reasonable and provides La Salle students with a favorable per

student settlement value. Here, this Settlement's $275 per student value[3] is comparable to, if not

better than, other tuition refund settlements that have been litigated for years. *See, e.g.*, *Staubus v.

University of Minnesota et al.*, No. 27-cv-20-8546 (Minn. Dist. Ct.) ($3.25 million settlement with

a per student recovery of approximately $60); *Pfeifer et al. v. Loyola University of Chicago*, No.

1:20-cv-03116 (N.D. Ill.) ($1.375 million settlement with a per student recovery of approximately

$88 per student); *Espejo et al. v. Cornell University*, No. 3:20-cv-00467-MAD-ML (N.D.N.Y.)

($3 million settlement with a per student recovery of $115); *Rocchio et al. v. Rutgers, The State

University of New Jersey*, No. MID-L-003039-20 (N.J. Super. Ct.) (approximately $77 per

student); *Choi et al. v. Brown University*, No. 1:20-cv-00191 (D.R.I.) (approximately $155 per

student); *Smith v. University of Pennsylvania*, No. 20-2086 (E.D. Pa.) (approximately $173 per

student); *Levin v. Board of Regents of the University of Colorado*, No. 2020cv31409 (Colo. Dist.

Ct., Denver Cnty.) (approximately $75 per student). In comparison, the approximately $275

settlement benefit here is greater than all of those settlements, and does not even include the

---

[3] Value based on the final Class List, which identified 3,185 Settlement Class Members.

additional Non-Cash Benefit of a reduction on tuition paid in the amount of twenty-five percent (25%) for Settlement Class Members who first enroll in a La Salle in-person, on-campus Master's degree program within two years of the Effective Date.

Given the risks of litigation, this value is fair and proportional. It is unlikely that Plaintiff could bring these claims on her own, given the imbalance between the cost of litigation and the limited ability to recover damages. These claims also would be subject to the same defenses that are outlined above. As such, this *Prudential* factor weighs heavily in favor of final approval.

### D. Whether Class or Subclass Members Are Accorded the Right to Opt-Out of the Settlement.

"Factor four considers whether class or subclass members are accorded the right to opt out of the settlement." *In re Suboxone*, 2024 WL 815503, at *10. Here, after the Court's Preliminary Approval Order, Notice was provided to the Settlement Class detailing the opt-out procedure and deadline. To date, zero class members have opted out. As such, this *Prudential* factor weighs in favor of final approval.

### E. Whether Any Provisions for Attorneys' Fees Are Reasonable

As discussed above, the Settlement's provision for attorneys' fees is reasonable and within the range of attorneys' fee awards commonly awarded in this Circuit, and the Notice specifically advised Settlement Class Members of the attorneys' fees and expenses Class Counsel would request the Court to approve. As such, this *Prudential* factor weighs in favor of final approval.

### F. Whether the Procedure for Processing Individual Claims under the Settlement Is Fair and Reasonable.

Under the settlement scheme, the procedure for individual claims is reasonable. Each Settlement Class Member will automatically receive their settlement benefit without the need to take any action. Thus, this *Prudential* factor weighs in favor of final approval.

## V.     THE MANNER OF DISTRIBUTION OF THE NET SETTLEMENT FUND IS FAIR AND ADEQUATE.

The standard for approval of a proposed distribution of settlement funds to a class is the same as the standard for approving the settlement itself, *i.e.*, that the distribution plan is fair, reasonable, and adequate. *See In re Suboxone*, 2024 WL 815503, at *11. "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Id.* (citation omitted); *see also Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining and Manufacturing Company)*, 513 F. Supp. 2d 322, 335 (E.D. Pa. 2007) (approving as reasonable a distribution plan that allocated settlement funds to class members based upon their *pro rata* share of the class's total transparent tape purchases during the damage period, net of invoice adjustments and rebates paid as of the date of the settlement).

Plaintiff and Class Counsel believe that the proposed manner of distribution is fair and reasonable, and respectfully submit it should be approved by the Court. Indeed, as noted above, the manner of distribution treats the Settlement Class equitably; each Settlement Class Member will automatically receive their *pro rata* Settlement Benefit pursuant to paragraph 4 of the Settlement Agreement, without the need to take any action. Notably, there have been no objections to the distribution proposal to date, which supports approval of the distribution plan.

## VI.     THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT.

In her motion for preliminary approval of the settlement, Plaintiff requested that the Court certify the Settlement Class for settlement purposes only so that notice of the Settlement, the Final Approval Hearing, and the rights of Settlement Class Members to object to the Settlement and request exclusion from the Settlement Class could be issued. For purposes of effectuating this Settlement, the Court should finally certify the Settlement Class. As mentioned in the Court's

Order, dated September 12, 2024, the Court preliminarily certified the proposed class. The class, as preliminary certified is:

> All La Sale undergraduate students who satisfied their payment obligations for the Spring Semester 2020 (tuition and/or mandatory fees) who were enrolled in at least one in-person on-campus class but had their class(es) moved to online learning.

ECF 33, ¶ 5. Since the Court's entry of the Preliminary Approval Order, nothing has changed to alter the propriety of the Court's preliminary certification of the Settlement Class for settlement purposes. Colella Decl., ¶ 13. Thus, for all of the reasons stated in Plaintiff's Motion for Preliminary Approval (ECF 27) (incorporated herein by reference), Plaintiff respectfully request that the Court affirm its preliminary certification and finally certify the Settlement Class for purposes of carrying out the settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and make a final appointment of Plaintiff as the class representative and Class Counsel as class counsel.

## VII.    NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS.

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner." Fed. R. Civ. P. 23(e)(1)(B). Notice of a settlement satisfies Rule 23(e) and due process where it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re NFL*, 821 F.3d at 435 (citation omitted). The Third Circuit has also explained that "[g]enerally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013).

Here, the Notice and the method used to disseminate the Notice to Potential Settlement Class Members satisfy these standards. The Court-approved Notice amply informed Settlement Class Members of, among other things: (i) the pendency of the Action; (ii) the nature of the Action and the Settlement Class's claims; (iii) the essential terms of the Settlement; (iv) the proposed manner of distribution of the Net Settlement Fund; (v) Settlement Class Members' rights to request exclusion from the Settlement Class or object to the Settlement, the manner of distribution, or the requested attorneys' fees or expenses; (vi) the binding effect of a judgment on Settlement Class Members; and (vii) information regarding Class Counsel's motion for an award of attorneys' fees and expenses and Case Contribution Award for Plaintiff. The Notice also sets forth the procedures and deadlines for: (i) requesting exclusion from the Settlement Class and (ii) objecting to any aspect of the Settlement, including the proposed distribution plan and the request for attorneys' fees and expenses and case awards for Plaintiff.

Settlement Class Members were mailed and/or emailed notices after a thorough address validation process. *See* Cowen Decl., ¶¶ 7-11. Emails were sent to 2,535 Settlement Class Members, with 2,505 confirmed as delivered. Cowen Decl., ¶¶ 7-8. The 650 Settlement Class Members who did not have an email address, and the 30 Settlement Class Member whose email was not delivered or bounced back, received Notice via first-class mail. *See* Cowen Decl., ¶¶ 9-10. In total, approximately 99.5% of the Settlement Class received notice of the proposed Settlement.

Additionally, a settlement-specific website was created where key settlement documents were posted, including the Long Form Notice. *See* Cowen Decl., ¶ 13. Settlement Class Members had until November 25, 2024, to object to the Settlement or request exclusion from the Settlement

Class. To date, there have been no objections to the settlement, and no requests for exclusion. Cowen Decl., ¶¶ 14-15.

Notice programs, such as the one deployed by Class Counsel, have been approved as adequate under the Due Process Clause and Rule 23. *See In re CertainTeed*, 269 F.R.D. 468. And, in other COVID-19 refund actions against other universities, substantially similar methods of notice have been preliminarily approved. *See, e.g.*, *Wright v. S. New Hampshire Univ.*, No. 20-cv-609-LM, 2021 WL 1617145, at *2 (D.N.H. Apr. 26, 2021); *see also Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM, Order, (S.D.N.Y. Mar. 30, 2021). For these reasons, Notice satisfied the requirements of Rule 23 and due process.

## CONCLUSION

The $875,000 plus additional Non-Cash Benefit Settlement obtained by Plaintiff and Class Counsel represents an excellent recovery for the Settlement Class, particularly in light of the significant litigation risks the Settlement Class faces, including the very real risk of the Settlement Class receiving no recovery at all. For the foregoing reason, Plaintiff respectfully requests that the Court finally approve the proposed Settlement and the proposed manner of distribution of the Net Settlement Fund as fair, reasonable, and adequate.

Dated: January 3, 2025                    Respectfully submitted,

*/s/ Nicholas A. Colella*
Nicholas A. Colella (PA 332699)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 322-9243
NickC@lcllp.com

Anthony Alesandro, Esq.*
**LEEDS BROWN LAW, P.C.**
1 Old Country Road, Suite 347
Carle Place, NY 11514
516.873.9550

aalesandro@leedsbrownlaw.com
*Pro Hac Vice*

*Attorneys for Plaintiff and the Settlement Class*